Kevin J. Stoops (*pro hac vice forthcoming*)
Alana A. Karbal (*pro hac vice forthcoming*)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
kstoops@sommerspc.com
akarbal@sommerspc.com

Jacqueline Mendez Soto (022597)
BARTON MENDEZ SOTO PLLC
401 W. Baseline Road, Suite 205
Tempe, Arizona 85283
Telephone: 480-550-5165
jacqueline@bartonmendezsoto.com

*Attorneys for Plaintiff and the*
*Putative Collective/Class Members*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hector Sanchez, individually, and on behalf of others similarly situated, | Case No. |
| Plaintiff, | |
| v. | **COLLECTIVE AND CLASS ACTION COMPLAINT** |
| Republic Services Customer Resource Center West, LLC, a limited liability company, | Jury Trial Requested |
| Defendant. | |

Plaintiff, Hector Sanchez ("Plaintiff"), hereby brings this Collective and Class Action Complaint against Defendant Republic Services Customer Resource Center West, LLC ("Defendant") and states as follows:

**INTRODUCTION**

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, The Nevada Wage and Hour Law, Nev. Rev. Stat. Ann. §§ 608.005, *et seq.* ("Nevada Wage Act"), and common law.

2.      Defendant holds itself out as being "a leader in environmental solutions, recycling & waste[,] provid[ing] the most complete set of recycling, waste and environmental solutions from a single-source provider."[1] According to Defendant's website, Defendant "offer[s] advanced recycling; solid waste, special waste and hazardous waste treatment and disposal; field and industrial services; 24/7 emergency response; and equipment rental and cleaning[],"[2] and services approximately 13 million customers.[3]

3.      In providing the aforementioned services, Defendant employed hourly call center employees with job titles that include, but are not limited to, Operation Excellence Senior Advisor, Inside Sales, Customer Support Specialist I, Customer Support Specialist I – ES Division, Customer Service Specialist II, and Customer Support Specialist Lead (collectively referred to as "CSRs"), in brick-and-mortar call centers and in remote call

---

[1] *See* https://www.linkedin.com/company/republic-services-inc/about/ (last visited Sept. 6, 2024).

[2] *Id*.

[3] *See* https://jobs.republicservices.com/us/en/job/ROURSAUSR134305EXTERNALENUS/Customer-Service-Specialist-II?utm_medium=phenom-feeds&source=LinkedIn&utm_source=linkedin (last visited Sept. 8, 2024).

center settings across the United States. Defendant heavily relied on CSRs to, among other things, receive and respond to residential and commercial customer service calls, new residential sales, inquiries, requests, and complaints; deliver superior customer service; return internal and external calls, email, and/or faxes; and log information about customer service interactions into Defendant's systems.

4.    Defendant classified its CSRs as non-exempt and tasked them with the primary job duty of providing over-the-phone and electronic customer service.

5.    The United States Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.

6.    One of those abuses, which is at issue in this case, is the employer's refusal to pay for work from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

7.    More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id*. Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

8.     Defendant violated the FLSA and common law by systematically failing to compensate its CSRs for work tasks completed before and after their scheduled shifts, when they were not logged into Defendant's timekeeping system. This timekeeping procedure resulted in CSRs not being paid for all overtime hours worked, and in non-overtime workweeks, for regular hours.

9.     More specifically, Defendant failed to compensate CSRs for the substantial time they spent turning on and booting up their computer and computer systems prior to clocking into Defendant's timekeeping system, and completing call documentation, sending emails, shutting down their programs/applications that they used during their scheduled shift, and restarting their computer after their last fielded call for the shift concluded and after clocking out of Defendant's timekeeping system.

10.     Defendant also violated the FLSA by failing to incorporate non-discretionary bonuses and other remuneration into its CSRs' regular hourly rate calculation.

11.     Plaintiff seeks a declaration that his rights, and the rights of the putative Collective and Class members, were violated, a judgment awarding him unpaid back wages, liquidated damages, attorneys' fees and costs to make them whole for damages they suffered, and any other remedies to which they may be entitled, and to help ensure Defendant will not subject future workers to the same illegal conduct in the future.

12.     At the earliest time possible, Plaintiff will request that the Court authorize notice of this action pursuant to 29 U.S.C. § 216(b) to all similarly situated employees who worked for Defendant at any time in the past three years.

## JURISDICTION AND VENUE

13.     This Court has subject-matter jurisdiction over Plaintiff's FLSA claim, pursuant to 28 U.S.C. § 1331, because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

14.     Additionally, this Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer… in any Federal or State court of competent jurisdiction."

15.     Defendant's annual sales exceed $500,000, and Defendant employs more than two individuals; thus, the FLSA applies in this case on an enterprise basis. Defendant's CSRs engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

16.     This Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. §1367 because they originate from the same facts that form the basis of his federal claims.

17.     This Court has personal jurisdiction over Defendant because Defendant conducts business within the state of Arizona, employs individuals within the state of

Arizona, is registered with the Arizona Corporation Commission, and maintains its principal place of business in the state of Arizona.

18.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant conducts business in this District, and a substantial portion of the events that give rise to Plaintiff's clams occurred in this District.

## PARTIES

19.    Plaintiff Hector Sanchez is a resident of Las Vegas, Nevada and worked for Defendant as a remote non-exempt CSR from approximately October 1, 2021 through approximately August 15, 2024. Defendant compensated Plaintiff through the payment of an hourly rate, most recently $24.50 per hour. Plaintiff's consent to join this collective action is attached as **Exhibit A**.

20.    Additional Collective members were or are employed by Defendant as CSRs during the past three (3) years and their consent to join forms will also be filed in this case.

21.    Defendant Republic Services Customer Resource Center West, LLC is a Delaware limited liability company (File No. 3375284), registered to do business in Arizona (Entity ID R20258636), with a principal place of business in Phoenix, Arizona. Defendant maintains a registered agent for service of process listed as CT Corporation System, 3800 North Central Avenue Suite 460, Phoenix, Arizona 85012.

//

//

## GENERAL ALLEGATIONS

22.    Prior to hiring prospective CSRs, Defendant provided them with a written offer setting forth the job title, the offered rate of pay, and the conditions of their employment.

23.    Defendant maintained documents demonstrating the promised hourly wage for each CSR, including, but not limited to: offer letters, paystubs, and/or payroll records.

24.    Plaintiff received an offer from Defendant to work as a CSR, and he accepted Defendant's offer with the understanding that his base hourly rate would be paid for all hours worked.

25.    Plaintiff performed under his agreement with Defendant by carrying out his job duties and responsibilities. More specifically, Plaintiff fielded incoming calls from and made outbound calls to Defendant's customers; handled and resolved escalated customer inquiries, issues, and complaints; provided appropriate customer solutions; and maintained records of customer interactions. Plaintiff utilized Defendant's applications and systems to track all events and customer service information. Plaintiff additionally performed the required unpaid off-the-clock work explained below.

26.    Defendant paid its CSRs at varying hourly rates.

27.    Defendant's CSRs typically worked five (5) days each week and up to, and on occasion more than, forty (40) hours per week.

28.    There were one or more instances during Plaintiff's employment when he worked forty (40) hours or more in a workweek.

29.     In addition to the base rate of pay, Defendant incorporated various types of routine and non-discretionary bonuses into its compensation structure. For example, Defendant promised and paid its CSRs non-discretionary bonuses such as "Cash Award T", "Cash Award F".

30.     Upon information and belief, Defendant utilized a centralized payroll system which calculated overtime pay for all similarly situated employees in the same or similar manner.

31.     Defendant provided training to CSRs, on, *inter alia*, how to carry out their day-to-day job duties; how to track their time; how to load and log into their computer programs at the beginning of the day and how to log out at the end of the day; attendance, schedule, and call quality expectations; and Defendant's policies. The training that all of Defendant's CSRs received was substantially, if not entirely, the same, and Defendant's CSRs, including Plaintiff, were subject to the same relevant policies and procedures.

32.     At all relevant times, Defendant controlled Plaintiff's and all other CSRs' work schedules, duties, protocols, applications, assignments, and employment conditions.

33.     To the extent that Defendant may have had written policies that required its employees to be paid for all hours worked, including overtime, the reality is that Defendant did not follow these policies, which resulted in CSRs, like Plaintiff, not being paid for all hours worked, including the off-the-clock work described herein.

34.     Defendant required Plaintiff and all other CSRs to use a computer and a variety of essential and indispensable computer programs, applications, and servers in

order to perform their job duties.

35.    Defendant instructed Plaintiff and other similarly situated CSRs to be "call ready" the moment their scheduled shift started. This required Defendant's CSRs to load and log into essential work-related computer programs and applications *before* the start of their shifts and *before* they were allowed to clock in so they could be prepared to field calls the moment their shifts began.

36.    During the boot-up and login process, Defendant's CSRs experienced technical difficulties, increasing the amount of off-the-clock work they performed that shift.

37.    Defendant enforced its "call ready" policy and required its CSRs to perform off-the-clock through its uniform attendance, compensation, timekeeping, and schedule adherence procedures; and the call quality assurance system it used.

38.    Defendant additionally maintained schedule attendance and adherence metrics pursuant to which it monitored the CSRs' clock-in times in relation to their start-of-shift time, as well as the time the CSRs went into a "ready" status.

39.    All of Defendant's CSRs used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and an indispensable part of the CSRs' work and they could not perform their jobs without them.

40.    Similarly, Defendant's CSRs, including Plaintiff, performed work off-the-clock after their scheduled shift and after clocking out of Defendant's timekeeping system

when they completed call documentation, sent emails to Defendant's local division, closed the programs and applications that they utilized during their shift, and restarted their computer.

41.    At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and its CSRs in order to pressure them into performing pre- and post-shift work off-the-clock.

42.    The pre- and post-shift off-the-clock time Plaintiff and all other CSRs spent booting-up/logging into/shutting down their computers and applications and programs, performing call documentation, sending emails, and restarting their computers directly benefited Defendant and was integral and indispensable to the CSRs' job responsibilities.

43.    As a result of the off-the-clock work described herein, Plaintiff and other CSRs were unlawfully deprived of approximately twenty (20) to thirty-five (35) minutes of compensation every day.

44.    At all relevant times, Defendant was able to track the amount of time Plaintiff and other CSRs spent in connection with the pre- and post-shift activities; however, Defendant failed to do so and failed to compensate Plaintiff and all other CSRs for the off-the-clock work they performed, thus breaching its contracts with its CSRs.

45.    Further, in light of the explicit and long-standing DOL guidance cited above, and previous litigation against Defendant alleging the same and/or substantially similar FLSA violations as those alleged herein[4], there is no conceivable way for Defendant to

---

[4] *See Harris et al v. Republic Service Inc., et al*, United States District Court for the District

1    establish that it acted in good faith.

2        46.    Despite knowing Plaintiff and all other CSRs performed this pre- and post-

3    shift work, Defendant and its managers failed to make any effort to stop or disallow it and

4    instead suffered and permitted it to happen.

5        47.    Defendant possesses, controls, and/or has access to information and

6    electronic data indicating the times Plaintiff and all other CSRs booted-up and logged into

7    their computers each day, along with the time they logged into the timekeeping system.

8        48.    Upon information and belief, Defendant also possesses, controls, and/or has

9    access to information and electronic data indicating when Plaintiff and other CSRs

10   experienced technical issues.

11       49.    Because Defendant required its CSRs, including Plaintiff, to perform pre-

12   and post-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are

13   inaccurate representations of the total amount of time CSRs spent working for Defendant.

14   Thus, the hours reflected on the CSRs' paystubs are also inaccurate representations of the

15   hours they worked.

16       **A.  Pre-Shift Off-the-Clock Work**

17       50.    The off-the-clock pre-shift process took substantial time on a daily basis,

18   approximately ten (10) to twenty (20) minutes per shift. Specifically, before each shift

19   CSRs were required to undertake essential work tasks such as: awakening their computer;

20   logging into Microsoft Windows using their username and/or password; connecting to

21   _____

of Arizona Case No. 2:19-cv-01891-JJT.

Defendant's virtual private network ("VPN") using a dual authentication process through which CSRs received a push notification on their cell phones and confirmed their identity; opening various programs and applications that were integral and indispensable to their job duties as CSRs (for example, Salesforce, Microsoft Outlook, Jabber, and Notepad); and clocking in.

51.     Defendant's CSRs had to complete much, if not all, of this process ***before***: (1) the start of their scheduled shifts; (2) they were allowed to clock into Defendant's timekeeping program; and (3) fielding calls. Consequently, the CSRs had to arrive to work approximately ten (10) to twenty (20) minutes before their scheduled shifts to complete their above-described start-up and log-in activities.

52.     Defendant's CSRs were not compensated for all or some of this time because, among other things, Defendant prohibited CSRs from clocking into the timekeeping system more than five (5) minutes before the start of their scheduled shifts and the boot-up process took longer than that to perform each shift.

53.     Thus, in workweeks where Defendant's CSRs worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, Defendant violated the FLSA by failing to: (1) pay them the federally mandated overtime compensation for all work performed; and (2) record all of the time that its CSRs, including Plaintiff, worked for Defendant's benefit.

54.     The pre-shift off-the-clock work CSRs performed directly benefited

Defendant and was integral and indispensable to their job duties and responsibilities.

**B. Post-Shift Off-the Clock Work**

55.    Pursuant to Defendant's policies, training, and direction, Plaintiff and all other CSRs were required to clock out the moment their scheduled shift concluded or when they finished fielding their last call for the shift and *before* completing call documentation, sending emails to Defendant's local division, closing the programs and applications they used during their scheduled shift, and restarting their computer.

56.    This resulted in Plaintiff and other CSRs performing approximately ten (10) to fifteen (15) minutes of off-the-clock work every shift.

57.    Thus, in workweeks where Defendant's CSRs worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, Defendant violated the FLSA by failing to: (1) pay them the federally mandated overtime compensation for all work performed; and (2) record all of the time that its CSRs, including Plaintiffs, worked for Defendant's benefit.

58.    The post-shift off-the-clock work Plaintiff and other CSRs performed was compensable, directly benefited Defendant and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to their job duties and responsibilities.

**C. The Off-the-Clock Work Results in Viable "Gap Time" Claims**

59.    "Gap time" claims are those "in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has

worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours."
*Kinkead v. Humana at Home, Inc*., 450 F.Supp.3d 162, 182 (D. Conn. Mar. 31, 2020); *see also Conner v. Cleveland Cty., N.C.*, 22 F.4th 412, 426 (4th Cir. 2022) ("we hold that overtime gap time claims are cognizable under the FLSA").

60.     Plaintiff, and similarly situated CSRs, regularly worked non-overtime hours (i.e. "gap time") for which they were not paid.

61.     During the weeks that CSRs did not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices was a deprivation of straight time wages, in breach of Defendant's contracts with its CSRs.

**D. Plaintiff's Exemplary Workweeks**

62.     The FLSA and regular wage violations discussed herein occurred throughout Plaintiff's employment with Defendant; however, as examples of instances where Defendant failed to pay Plaintiff regular wages for work performed and overtime for hours worked in excess of forty (40) hours (as mandated by the FLSA), Plaintiff identifies the following earnings statements:

**November 5 – 11, 2023 Earnings Statement**

- Plaintiff worked less than 40 hours in the workweek at a rate of $25.50 per hour and upon information and belief was paid $25.50 for each regular hour worked.

- With pre- and post-shift off-the-clock work, Plaintiff should have been paid an additional 20 to 35 minutes or more at his regular rate of $25.50 for each regular hour.

**Ex. B**, Sanchez 11/05/23 – 11/11/23 Earnings Statement.

**November 6 – 12, 2022 Earnings Statement**

- Plaintiff worked more than 40 hours in the workweek at an overtime rate of $38.25 per hour and upon information and belief was paid $38.25 per hour in overtime.

- With pre- and post-shift off-the-clock work, Plaintiff should have been paid an additional 20 to 35 minutes or more at his overtime rate of $38.25 for each hour worked in excess of 40 in the workweek.

**Ex. C**, Sanchez 11/06/22 – 11/12/22 Earnings Statement.

### E.  <u>The Regular Rate of Pay</u>

63.    Under FLSA, the regular rate is the "keystone" to calculating the correct overtime rate. *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945). It is "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed." 29 C.F.R. §778.108.

64.    No matter how an employee is paid—whether by the hour, by the piece, on a commission, or on a salary—the employee's compensation must be converted to an equivalent hourly rate from which the overtime rate can be calculated. 29 C.F.R. §778.109. "The regular hourly rate of pay is determined by dividing the employee's total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by the employee in that workweek for which such compensation was paid." *Id.*

65.    There is a statutory presumption that remuneration in any form must be included in the regular rate calculation. Defendant carries the burden to establish that any payment should be excluded. *Acton v. City of Columbia, Mo.*, 436 F.3d 969, 976 (8th Cir.

2006) (citing *Madison v. Resources for Human Dev. Inc.*, 233 F.3d 187 (3rd Cir. 2000)). Thus, determining the regular rate starts from the premise that all payments made to Defendant's CSRs for work performed are included in the base calculation unless specifically excluded by statute.

66.     Once the total amount of an employee's "regular" compensation is deduced, "the determination of the regular rate becomes a matter of mathematical computation." *Walling*, 325 U.S. at 425. The regular rate must be expressed as an hourly rate because, although any method of compensating an employee is permitted, Defendant imposes its overtime requirements in terms of hourly wages. Thus, if necessary, an employer must convert an employee's wages to an hourly rate to determine compliance with the statute.

67.     Plaintiff's "total remuneration" included not only his base hourly pay, but also any non-discretionary bonuses. Indeed, 29 C.F.R. § 548.502 expressly provides that "[e]xtra overtime compensation must be separately computed and paid on payments such as bonuses or shift differentials which are not included in the computation of the established basic rate…."; *see also* 29 C.F.R. §778.207(b) (Under FLSA, the regular rate of pay must consist of all forms of remuneration including non-discretionary bonuses).

68.     Defendant's non-discretionary bonuses do not fall within any of the statutory exclusions from the regular rate as provided in 29 U.S.C. §§ 207(e)(1)-(8).

69.     Under 29 C.F.R. § 778.211, "[b]onuses which are announced to employees to induce them to work more steadily ... or to remain with the firm ..." must be included in an employee's regular rate. 29 C.F.R. § 778.211(c).

1

## F. **Defendant Failed to Calculate the Regular Rate of Pay**

2   70.   Despite the well-established law on this issue, Defendant failed to

3   incorporate non-discretionary bonuses into its CSRs' regular rate calculations, resulting in

4   *prima facie* violations of the FLSA.

5   71.   Plaintiff and the FLSA Collective regularly worked in excess of 40 hours a

6   week and were paid some overtime for those hours but at a rate that did not include

7   Defendant's non-discretionary bonuses as required by the FLSA.

8   72.   Consistent with Section 7(a) of the FLSA, Plaintiff and the FLSA Collective

9   are entitled to overtime pay equal to 1.5 times their regular rate of pay for hours worked in

10   excess of forty (40) hours per week.

11   73.   For example, Plaintiff's pay stubs for the pay period beginning 11/6/2022

12   through 11/18/2022 shows 40.73 hours of work, a base hourly rate of $25.50, and gross

13   earnings of $1,547.93, inclusive of $500.00 in non-discretionary bonus pay. However, his

14   overtime rate did not account for the non-discretionary bonus pay and, therefore, violates

15   the FLSA.

16   74.   To the extent that any of Defendant's premium compensation paid to

17   Plaintiff, and those similarly situated, could be qualified and applied as a credit under 29

18   U.S.C. §§ 207(7)(h), those credits may only be applied to the same workweek or work

19   period in which the premiums were paid. *Herman v. Fabri-Centers of Am., Inc*., 308 F. 3d

20   580, 590-92 (6th Cir. 2002).

21

75.     In a Department of Labor Opinion Letter dated December 23, 1985, the Deputy Administrator stated: "We wish to point out that the surplus overtime premium payments, which may be credited against overtime pay pursuant to section 7(h) of [the] FLSA, may not be carried forward or applied retroactively to satisfy an employer's overtime pay obligation in future or past pay periods." *Opinion Letter Fair Labor Standards Act* (FLSA), 1985 WL 304329 at 3 (1985).

76.     As a result of these *prima facie* FLSA violations, Defendant is liable to Plaintiff and those similarly situated for unpaid wages, liquidated damages, reasonable attorney's fees and costs, interest, and any other relief deemed appropriate by the Court.

## COLLECTIVE ACTION ALLEGATIONS

77.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of himself and on behalf of:

> *All current and former hourly call center employees who work or have worked for Defendant at any time during the past three years and required the use of a computer and programs and applications in order to perform their job duties.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

78.     Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside salespersons.

79.     Defendant is liable under the FLSA for, *inter alia*, failing to properly

compensate Plaintiff and others similarly situated.

80.    Consistent with Defendant's policies and practice, Plaintiff and the proposed FLSA Collective were not paid for all straight and/or premium overtime compensation in workweeks during which they worked forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein.

81.    All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work the Plaintiff and the proposed FLSA Collective performed.

82.    Defendant was aware, or should have been aware, that federal law required it to pay Plaintiff and the proposed FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek, and to include non-discretionary bonuses in the Plaintiff and FLSA Collective members' regular rate calculation.

83.    As part of its regular business practices, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective members. This policy and pattern or practice included, but was not limited to:

      a.  Willfully failing to pay its employees, including Plaintiff and the FLSA Collective members for all regular hours they worked off-the-clock in non-overtime workweeks;

      b.  Willfully failing to pay its employees, including Plaintiff and the FLSA Collective members, for all overtime gap time and premium overtime wages for hours they worked off-the-clock in excess of forty (40) hours per workweek;

c. Willfully failing to include non-discretionary bonuses and other remuneration into the regular rate of pay for Plaintiff and the FLSA Collective members when calculating overtime rates; and

d. Willfully failing to record all of the time that its employees, including Plaintiff and the FLSA Collective members, worked for the benefit of Defendant.

84.    Defendant's unlawful conduct was (and is) widespread, repeated, and consistent.

85.    A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; (d) their claims are based upon the same factual and legal theories; and (e) they were eligible for and received non-discretionary bonuses and other forms of remuneration that were not included in their regular rate as required by the FLSA.

86.    The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues are the same for every proposed FLSA Collective member, to wit: whether the FLSA Collective members were (1) required to work uncompensated boot-up and log-out time; (2) entitled to their regular hourly wage in non-overtime workweeks and overtime for hours worked over forty (40) in a week; and (3) paid a regular and resulting

overtime rate that did not include all forms of remuneration, including, but not limited to, non-discretionary bonuses.

87.    Plaintiff estimates the FLSA Collective, including both current and former CSRs over the relevant period, includes hundreds, if not thousands, of members. The precise number should be readily available from a review of Defendant's personnel and payroll records.

88.    The FLSA Collective should be notified of this action and allowed to opt-in, pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the FLSA Collective members, who have been unlawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendant.

## RULE 23 NEVADA STATE LAW CLASS ACTION ALLEGATIONS

89.    Plaintiff brings this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on behalf of:

> *All current and former hourly call center employees who work or have worked for Defendant in Nevada during the applicable statutory period and required the use of a computer and programs and applications in order to perform their job duties.*

(hereinafter referred to as the "Rule 23 Nevada Class"). Plaintiff reserves the right to amend this definition if necessary.

90.    The members of the Rule 23 Nevada Class are so numerous that joinder of all Rule 23 Nevada Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds, if not thousands, of Rule 23 Nevada Class members. Rule

23 Nevada Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

91.    There is a well-defined community of interests among Rule 23 Nevada Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nevada Class. These common legal and factual questions, include, but are not limited to, the following:

    a.  Whether Rule 23 Nevada Class members performed unpaid pre- and post-shift work activities, and if so, whether such work activities are compensable; and

    b.  Whether Rule 23 Nevada Class members are owed wages for time spent performing pre- and post-shift work activities, and if so, the appropriate amount thereof.

92.    Plaintiff's claims are typical of those of the Rule 23 Nevada Class in that he and all other Rule 23 Nevada Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nevada Class members' claims and his legal theories are based on the same legal theories as all other Rule 23 Nevada Class members.

93.    Plaintiff will fully and adequately protect the interests of the Rule 23 Nevada Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nevada Class.

94.    A class action is superior to other available methods for the fair and efficient

adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nevada Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

95.    This case will be manageable as a Rule 23 class action. Plaintiff and his counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

96.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

97.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nevada Class, and because declaratory relief is appropriate in this case with respect to the Rule 23 Nevada Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

98.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of himself and on behalf of:

> *All current and former hourly call center employees who work or have*

> *worked for Defendant during the applicable statutory period and required the use of a computer and programs and applications in order to perform their job duties.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

99.     The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds, if not thousands, of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

100.     There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

> a.     Whether the pre-shift time Rule 23 Nationwide Class members spent on startup and login activities each shift is compensable time under applicable law;
>
> b.     Whether the post-shift time Rule 23 Nationwide Class members spent documenting calls, sending emails, closing all programs, applications and networks, and restarting their computers is compensable time under applicable law; and
>
> c.     Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

101.     Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that he and all other Rule 23 Nationwide Class members suffered damages as a direct and

proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and his legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

102.    Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

103.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

104.    This case will be manageable as a Rule 23 Class action. Plaintiff and his counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

105.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical

rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

106.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class, and because declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**FLSA COLLECTIVE ACTION**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME**

107.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

108.    At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

109.    At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

110.    At all times relevant to this action, Plaintiff and the FLSA Collective members were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

111.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the FLSA Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

112.    Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

113.    Plaintiff either: (1) engaged in commerce; (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

114.    The FLSA requires an employer to pay employees for all hours worked and the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

115.    The FLSA and its implementing regulations require that the regular rate of pay include all forms of remuneration. Section 207(e) outlines eight exceptions where payments to employees may not be included in the regular rate. Defendant's non-discretionary bonuses do not fall into any of those exceptions.

116.    The FLSA also requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

117.    At all times relevant to this action, Defendant engaged in an unlawful policy and practice of requiring Plaintiff and all the FLSA Collective members to perform off-the-clock work, every shift, and failed to pay these employees their regular hourly rate for all hours worked in non-overtime workweeks, overtime gap time in weeks where it occurred, and the federally mandated overtime compensation for all work performed over forty (40) hours per week.

118.    The off-the-clock work performed every shift by Plaintiff and the FLSA

Collective members was an essential part of their jobs and these activities and the time associated with these activities was significant.

119. In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, all of this overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including a shift differential where applicable. 29 U.S.C. § 207. Further, all "gap time" should have been paid at Plaintiff and the FLSA Collective's regular hourly rate.

120. As a result of Defendant's unlawful policies and practices, Plaintiff and the FLSA Collective members were deprived of both straight-time and overtime wages in violation of the FLSA.

121. At all relevant times, Defendant failed to include non-discretionary remuneration into the regular rate of pay for Plaintiff and all others similarly situated when calculating overtime rates. The failure to include this remuneration in overtime computations violated Section 7(a) of the FLSA, because Defendant's CSRs were working overtime without being paid the statutorily required rates. 29 U.S.C § 207(a).

122. At all relevant times, Defendant had a policy and practice of willfully refusing to pay Plaintiff and all putative FLSA Collective members the legally required amount of overtime compensation for all hours worked in excess of 40 hours per workweek, in violation of the FLSA.

123.    As a result of Defendant's willful failure to compensate Plaintiff and the putative FLSA Collective members at a rate not less than 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, Defendant violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq.*, including but not limited to 29 U.S.C. §§ 207(a)(1), 215(a), and 29 C.F.R. §§ 778.104. Defendant's conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

124.    Defendant could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for all work activities, but did not.

125.    As a result of the foregoing, Plaintiff and all others similarly situated are entitled to backpay as well as liquidated damages in an amount equal to their back pay. As a result of Defendant's FLSA violations, Plaintiff and all others similarly situated are owed overtime wages at a rate to be calculated by taking the difference between the overtime they should have received for each workweek and the overtime they did receive during the same time period calculated using the incorrect regular rate. The exact amount can be readily determined using payroll and other employment records Defendant is statutorily required to maintain under FLSA 29 U.S.C. § 211(c).

126.    Plaintiff and all others similarly situated are entitled to back pay, liquidated damages, interest, attorney's fees and costs, and other relief as appropriate under the statute. 29 U.S.C. § 216(b).

*//*

**COUNT II**
**RULE 23 NEVADA CLASS ACTION**
**VIOLATIONS OF THE NEVADA WAGE AND HOUR LAWS,**
**NEV. REV. STAT. ANN., §§ 608.005, *et seq.* ("NEVADA WAGE ACT")**

127.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

128.    At all times relevant to the action, Defendant was an employer covered by the overtime and wage mandates of the Nevada Wage Act and Plaintiff and the Rule 23 Nevada Class were employees entitled to the Nevada Wage Act's protections. *See* Nev. Rev. Stat. Ann. §§ 608.010, 608.011.

129.    The Nevada Wage Act entitles employees to compensation for every hour worked in a workweek. *See* Nev. Rev. Stat. Ann. §§ 608.012, 608.016.

130.    The Nevada Wage Act, Nev. Rev. Stat. Ann. §§ 608.005, *et seq.* provides that employees are entitled to minimum wages "for each hour the employee works," Nev. Rev. Stat. Ann. § 608.016, and overtime compensation calculated at time-and-a-half of their regular rate of pay for each hour worked each week in excess of forty (40). Nev. Rev. Stat. Ann. § 608.018.

131.    The Nevada Wage Act entitles employees to overtime compensation at a rate equal to 1.5 times the employee's regular rate of pay for all hours worked in excess of forty (40) hours per week or eight (8) hours per day, assuming the employee earns less than 1.5 times the Nevada minimum wages. *See* Nev. Rev. Stat. Ann. § 608.018.

132.    Nev. Rev. Stat. Ann. § 608.260 provides that an employee may bring a civil action against an employer for failing to pay minimum wage and overtime compensation.

133.    Defendant violated the Nevada Wage Act by regularly and repeatedly failing to compensate Plaintiff and the Rule 23 Nevada Class for the time spent on the work activities described in this Complaint.

134.    Defendant's uniform policy and practice, as described above, was/is willful, intentional, unreasonable, arbitrary, and in bad faith.

135.    As a result, the Rule 23 Nevada Class has and will continue to suffer loss of income and other damages. Accordingly, the Rule 23 Nevada Class is entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the Nevada Wage Act at an amount to be proven at trial.

### COUNT III
### RULE 23 NATIONWIDE CLASS ACTION
### BREACH OF CONTRACT

136.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

137.    At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendant.

138.    Evidence of these contracts include Defendant's letters offering employment, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment at a specified, above minimum wage for CSR work, which Plaintiff accepted and performed, but Defendant failed to perform by paying

Plaintiff and the Rule 23 Nationwide Class the promised wages.

139. For example, Defendant offered to compensate Plaintiff at a minimum of $15.00 per hour if he agreed to perform services for Defendant as a CSR. Plaintiff accepted Defendant's offer and performed his duties as a CSR in reliance on the offer.

140. Defendant breached its contractual promises by failing to pay CSRs at their fixed, pre-agreed upon hourly rate for all of the hours worked.

141. Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, was contractually entitled to varying minimum hourly rates within the applicable period.

142. Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre- and post-shift work described herein.

143. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

144. Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this Complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with

Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

145.    Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., pure "gap time" claims for non-overtime hours/workweeks).

146.    Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Nationwide Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

147.    As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

**COUNT IV**
**RULE 23 NATIONWIDE CLASS ACTION**
**UNJUST ENRICHMENT**

148.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

149.    At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for Defendant's benefit.

150.    Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing

their jobs and carrying out their required work duties.

151.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

152.    Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

153.    Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

154.    Despite this, Defendant did not pay Plaintiff and the Rule 23 Nationwide Class members for all of their work.

155.    Upon information and belief, Defendant used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance its various business ventures or pay its equity owners.

156.    Defendant was unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

157.    Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time,

effort and their resources in a profitable manner.

158.    As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## RELIEF REQUESTED

WHEREFORE, Plaintiff requests the following relief:

a. An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b. An Order certifying this action as a class action (for the Rule 23 Nevada Class) pursuant to Rule 23(b)(3) with respect to Plaintiff's state law claims (Count II);

c. An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts IV and V);

d. An Order designating Plaintiff as the representative of the FLSA Collective, the Rule 23 Nevada Class, and the Rule 23 Nationwide Class, and undersigned counsel as class counsel for the same;

e. An Orde requiring a complete accounting of all the compensation Plaintiff and the FLSA Collective are owed;

f. An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

g. An Order declaring Defendant's violations of the FLSA were willful;

h. An Order declaring Defendant violated Nevada state law by failing to pay Plaintiff and the Rule 23 Nevada Class the minimum wage and overtime compensation to which they were entitled;

i.   An Order declaring Defendant breached its contracts with Plaintiffs and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

j.   An Order declaring Defendant was unjustly enriched by the off-the-clock work it required Plaintiffs and the members of the Rule 23 Nationwide Class to perform;

k.   An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the FLSA Collective, the Rule 23 Nevada Class, and the Rule 23 Nationwide Class the full amount of damages and penalty damages available by law;

l.   An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in prosecuting this action as required by statute;

m.   An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

n.   An Order awarding such other and further relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiff, Hector Sanchez, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

DATED this 19th of September, 2024        Respectfully Submitted,

/s/ _Jacqueline Mendez Soto_

Jacqueline Mendez Soto, 022597
BARTON MENDEZ SOTO PLLC
401 W. Baseline Road, Suite 205
Tempe, Arizona 85283
480-550-5165
Jacqueline@bartonmendezsoto.com

Kevin J. Stoops (*pro hac vice forthcoming*)
Alana A. Karbal (*pro hac vice forthcoming*)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
kstoops@sommerspc.com
akarbal@sommerspc.com

*Attorneys for Plaintiff and the*
*Putative Collective/Class Members*