**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hector Sanchez, | No. CV-24-02499-PHX-KML |
| Plaintiff, | **ORDER** |
| v. | |
| Republic Services Customer Resource Center West LLC, | |
| Defendant. | |

Plaintiff Hector Sanchez was a customer support representative formerly employed at a call center operated by defendant Republic Services Customer Resource Center West, LLC. He filed a putative collective and class action for violations of the Fair Labor Standards Act (FLSA), breach of contract, and unjust enrichment, arguing Republic Services failed to pay him wages for time worked before and after clocking in for work during weeks when he worked more than 40 hours. Republic Services moved to dismiss, and its motion is granted and denied in part.

**I.     Background**

Republic Services is a recycling and waste treatment and disposal business with its principal place of business in Phoenix. (Doc. 18 at 2, 6.) Republic Services employs customer support representatives (CSRs) who provide customer service at call centers. (Doc. 18 at 2–3.) Their responsibilities include receiving and responding to customer inquiries, service calls, and complaints. (Doc. 18 at 2.)

Republic Services instructed its CSRs to be "call ready" the moment their scheduled

shifts start. (Doc. 18 at 9.) Because Republic Services required CSRs to use several computer programs to field calls, they had to log into and load these programs before they were permitted to clock in. (Doc. 18 at 9.) Sometimes, CSRs experienced technical difficulties as they started their computers, increasing the amount of off-the-clock work they performed that shift. (Doc. 18 at 9.)

After they completed their shifts, CSRs were required to clock out of Republic Services' timekeeping system but continue performing work. (Doc. 18 at 9.) This work included completing call documentation, sending emails to regional representatives, closing computer programs, and restarting their computers. (Doc. 18 at 9–10.) As a result of these policies, CSRs worked approximately 20 to 35 extra minutes daily without compensation. (Doc. 18 at 10.) Sanchez, a former CSR who worked remotely from his home in Nevada, filed this complaint on behalf of a nation-wide collective and class alleging Republic Services' timekeeping policies violated FLSA and the Nevada Wage Act, breached CSR employment agreements, and unjustly enriched Republic Services. (Doc. 18.) Sanchez only seeks wages under FLSA for weeks in which he worked more than 40 hours. (Doc. 18 at 27.) Republic Services moved to dismiss Sanchez's FLSA, breach of contract, and unjust enrichment claims for failure to state a claim under Rule 12(b)(6) and his breach of contract and unjust enrichment claims for lack of standing under Rule 12(b)(1). (Doc. 22 at 2.) Republic Services' motion is granted and denied in part.

**II.     Motion to Dismiss for Failure to State a Claim**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This is not a "probability requirement," but a requirement that the factual allegations show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[D]etermining whether a complaint states a plausible claim is context specific, requiring

the reviewing court to draw on its experience and common sense." *Id*. at 663–64.

### a. FLSA Claims

Sanchez seeks compensation under FLSA for work performed before and after he clocked in, including overtime pay and what is known as "overtime gap pay." (Doc. 18 at 27.) Republic Services does not seek to dismiss Sanchez's request for overtime pay but argues FLSA does not permit his overtime gap pay claim. The court disagrees.

FLSA requires covered employers to pay employees a minimum wage and overtime wages at a rate of 1.5 times their regular rate of pay for any hours worked over 40 per week. 29 U.S.C. § 207. "Gap time" is uncompensated "time that is not covered by the overtime provisions because it does not exceed the overtime limit" and "is not covered by the minimum wage provisions because, even though it is uncompensated, the employees are still being paid a minimum wage when their salaries are averaged across their actual time worked." *Adair v. City of Kirkland*, 185 F.3d 1055, 1062 n.6 (9th Cir. 1999). Essentially, it is "non-overtime hours worked for which an employee is not compensated." *Davis v. Abington Mem'l Hosp*., 765 F.3d 236, 244 (3rd Cir. 2014).

Courts recognize two forms of gap time claims: pure gap time and overtime gap time. Pure gap time claims are for regular wages for unpaid work during pay periods without overtime. *Gomley v. Crossmark, Inc*., No. 1:13-CV-00420-BLW, 2015 WL 1825481, at *6 (D. Idaho Apr. 22, 2015). These claims are generally not cognizable where employees are still paid a minimum wage when their wages are averaged across their actual time worked. *Adair*, 185 F.3d at 1062 n.6. Overtime gap time claims, in contrast, are for unpaid straight-time wages in a week where an employee worked over 40 hours. *Gomley*, 2015 WL 1825481, at *6.

Using Sanchez's allegations as an example, his normal hourly rate was $24.50 per hour, with an overtime rate of $36.75. If in a given week he worked 38 hours on the clock and two hours off the clock, his only option would be a claim for pure gap time based on the two hours off the clock. But Sanchez's wages when averaged across the 40 hours he worked would still exceed the minimum wage. The prevailing view is FLSA therefore

would not allow Sanchez to recover for the two hours, *i.e.* pure gap time. *Gomley*, 2015 WL 1825481, at \*6 (citing *Nakahata v. New York–Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201–02 (2nd Cir. 2013); *Davis*, 765 F.3d at 244 (3rd Cir. 2014)).

But if instead Sanchez worked 38 hours on the clock and *four* hours off the clock, FLSA would permit him to recover two hours at his overtime rate ($36.75/hour). And an attempt to recover the two hours of unpaid regular time at his normal hourly rate ($24.50/hour) would be an attempt to recover overtime gap time.

Sanchez seeks overtime gap time at his normal rate and overtime wages for weeks when he worked more, "or close enough" to, 40 hours "when considering the uncompensated off-the-clock work" he describes. (Doc. 18 at 27.) Because Sanchez's response to Republic Services' motion only addresses the viability of his overtime gap time claims, the court construes his complaint as only seeking to recover overtime gap time wages, not pure gap time wages. (Doc. 23 at 7–10.)

The Ninth Circuit has not directly addressed the viability of overtime gap time claims under FLSA. *Wallace v. City of San Jose*, No. 5:16-CV-04914-HRL, 2018 WL 2197721, at \*7 (N.D. Cal. May 14, 2018) ("[T]he Ninth Circuit apparently has not ruled on the [viability of overtime gap time claims].") *aff'd*, 799 F. App'x 477 (9th Cir. 2020). Circuit courts are split on this issue. The Second Circuit and some district courts within the Ninth Circuit have declined to recognize overtime gap time claims. *See Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 116 (2nd Cir. 2013); *see also Gomley*, 2015 WL 1825481, at \*6 ("The plain language of the FLSA does not encompass gap time pay— whether it be pure gap time or overtime gap time."); *Canh Le v. DirecTV, LLC*, No. 2:16-CV-01369-SVW-AS, 2017 WL 6939087, at \* 19 (C.D. Cal. Nov. 2, 2017) ("Plaintiffs lack authority for the argument that the unpaid work somehow becomes compensable when a Plaintiff works more than 40 hours in a week.").

On the other hand, the Fourth Circuit recently recognized the viability of overtime gap time claims. *See Conner v. Cleveland Cnty., N. Carolina*, 22 F.4th 412, 424 (4th Cir. 2022). The parties have not cited, and the court has not located, a case in which a district

court within the Ninth Circuit (particularly the District of Arizona) has addressed the issue after *Conner*.

FLSA's text provides that every employer shall pay a minimum of $7.25 an hour and an employee who works "in excess of" forty hours shall be compensated for that excess work "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. §§ 206, 207. But FLSA is silent on overtime gap time wages, except insofar as such wages may necessarily be implicated by the statute's reference to paying overtime wages. *See* 29 U.S.C. §§ 201–19. The Department of Labor (DOL) has provided guidance addressing this gap at 29 C.F.R. § 778.315, titled "Payment for all hours worked in overtime workweek is required." That provision states: "extra compensation for the excess hours of overtime work under the Act cannot be said to have been paid to an employee unless all the straight time compensation due him for the nonovertime hours under his contract (express or implied) or under any applicable statute has been paid." 29 C.F.R. § 778.315.

In *Lundy*, the Second Circuit declined to defer to 29 C.F.R. § 778.315, holding the DOL's guidance to be unpersuasive. 711 F.3d at 116–17. *Lundy*'s analysis of whether it owed deference to the regulation was cursory, ultimately concluding after a few sentences that the DOL provided "no statutory support or reasoned explanation" for its interpretation of FLSA. *Id.* at 117.

In contrast, the Fourth Circuit's more recent opinion in *Conner* extensively analyzed and ultimately deferred to the DOL's guidance under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). *Conner*, 22 F.4th at 421–24. *Conner* first noted the DOL's guidance has remained unchanged for the last 53 (now 56) years. *Id.* at 422. The DOL built on this guidance, referencing it in at least four other longstanding DOL FLSA interpretations. *Id.* at 422–23 (citing 29 C.F.R. §§ 778.317, 778.322, 778.403, 794.142). The DOL released several administrative decisions applying the guidance, confirming the DOL's view of its continued validity. *Id.* at 422 (citing *In the Matter of: Hong Kong Ent. (overseas) Invs., Ltd.*, ARB No. 13-028, 2014 WL 6850013, at *8 (U.S. Dep't of Lab. Nov. 25, 2014)).

- 5 -

Finally, the Fourth Circuit concluded the guidance accords with congressional intent in passing FLSA "to protect employees from detrimental labor conditions" including "excessive work hours and substandard wages." *Id.* at 423 (quoting *Monahan v. Cnty. of Chesterfield, Va.*, 95 F.3d 1263, 1267 (4th Cir. 1996)).

*Conner* ultimately concluded "an overtime gap time violation is a species of overtime violation" because "an employee who has not been paid all the straight time she is owed has not been properly paid her overtime." *Id.* at 424. As such, "allowing any amount other than the full amount of straight-time wages to count as compliance" would allow employers to implement "creative payment schemes" and "frustrate the purposes of the FLSA just as surely as would nonpayment for specified hours." *Id*. at 425.

*Lundy* and *Conner*'s different outcomes hinged on the varying levels of deference the Second and Fourth Circuits provided to the DOL's guidance. The question for this court is therefore which interpretation better accords with Supreme Court and Ninth Circuit authority.

As to *Skidmore* deference, in considering the weight to be given to the DOL's interpretation, the Supreme Court requires that lower courts look to "the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." *Skidmore*, 323 U.S. at 140. In that respect, this court finds the Fourth Circuit's analysis far more thorough and persuasive than the Second Circuit's, which failed to address these factors. And although Republic Services argues the court may no longer defer to an agency's interpretation under the Supreme Court's holding in *Loper Bright Enterprises v. Raimondo*, that decision did not overrule *Skidmore*. *See* 603 U.S. 369, 394 (2024). Indeed, even as the *Chevron* deference issues ultimately decided in *Loper Bright* were percolating, the Ninth Circuit continued to defer to DOL (and other agency) guidance under *Skidmore*. *See, e.g., Bugielski v. AT&T Servs., Inc*., 76 F.4th 894, 902 n.3 (9th Cir. 2023) (respecting DOL's advisory opinion under *Skidmore*); *see also Lopez v. Garland*, 116 F.4th 1032, 1036 (9th Cir. 2024) (explaining that although an agency's interpretation is "'not controlling,' it may still have 'power to persuade' based on

'the thoroughness evident in its consideration, the validity of its reasoning, [and] its consistency with earlier and later pronouncements'") (quoting *Skidmore*, 323 U.S. at 140).

The outcome here also accords with previous Ninth Circuit cases, including one interpreting FLSA in a context at least closely analogous—maybe substantively identical—to an overtime gap claim. In *Donovan v. Crisostomo*, an employer required some employees work 48 hours per week some weeks. 689 F.2d 869, 871–72 (9th Cir. 1982). The employer withheld a portion of its employees' wages each pay period as a "kickback" in all weeks, both when an employee worked 40 or less hours and when an employee worked more than 40 hours.

The Ninth Circuit held if the employer were permitted to reduce its employees' straight-time pay during overtime weeks, FLSA's purpose of "provid[ing] for the strain of long hours by making overtime work more expensive would be circumvented" and "[a]n employer could effectively eliminate the premium paid for overtime" by failing to pay straight-time wages in an amount equal to or greater than the overtime premium. *Id*. at 873. Citing the DOL guidance's reasoning, the Ninth Circuit held straight-time wages to be "a necessary element of the overtime compensation." *Id*. at 873, 876 n.13. Allowing an employer to shirk its obligations to pay straight time when overtime was worked would "frustrate the policy of . . . the FLSA." *Id*.; *see also Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901 (9th Cir. 2004) (finding time changing into and out of uniforms on-site was compensable under FLSA).

Republic Services argues *Donovan* is inapposite because Sanchez does not allege a similar kickback scheme. (Doc. 24 at 3 n.1.) But although the mechanism for avoiding payment of straight-time wages is different here, the same reasoning applies. That is, *Donovan* addressed a "kickback" scheme where straight-time wages were paid and then wrongfully recouped. Republic Services allegedly skipped the interim step by not paying the straight-time wages in the first place. If there is a material difference between a kickback scheme and simply not paying wages in the first place, Republic Services has not identified it. And any species of "creative payment scheme" allows an employer to frustrate

the purposes of FLSA. *See Donovan*, 689 F.2d at 876; *Conner*, 22 F.4th at 425.

Permitting Republic Services to avoid paying the straight time it owes its employees in overtime weeks would neutralize the premium pay FLSA requires for overtime. This result accords with *Skidmore* deference to the DOL's guidance, *Donovan*, and FLSA's statutory purposes. Accordingly, Republic Services' motion to dismiss Sanchez's FLSA claim is denied.

### b. Common Law Claims

Republic Services moves to dismiss Sanchez's breach of contract and unjust enrichment claims under Rule 12(b)(6) because he does not specify which state laws apply. Sanchez argues he has adequately alleged the elements of a breach of contract and unjust enrichment claims at this stage to give Republic Services sufficient notice of the content of his claims under the "low threshold pleading requirements of Rule 8(a)." (Doc. 23 at 13 (quoting *Gregoire v. Broughton*, No. CV 10-780-TUC-FRZ, 2012 WL 12874592, at *2 (D. Ariz. Aug. 3, 2012).) The court agrees.

"A party need not plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case." *Pac. Coast Fed'n of Fishermen's Associations v. Glaser*, 945 F.3d 1076, 1086 (9th Cir. 2019). The language of Rule 12(b)(6) does not require a plaintiff to specify which state's law applies. *Blue Cross of California Inc. v. Insys Therapeutics Inc.*, 390 F. Supp. 3d 996, 1008 (D. Ariz. 2019) ("Neither the language of Rule 12(b)(6) nor *Twombly*[, 550 U.S. 544] and *Iqbal*[, 556 U.S. 662] impose" a requirement to specify which state's laws apply).

Republic Services cites a number of out-of-district cases for the proposition that a plaintiff must specify which state's laws apply to a common-law claim. (Doc. 22 at 8–9 (collecting cases).) But the "origins of [Republic Services'] proposition appear dubious at best." *Blue Cross*, 390 F. Supp. 3d at 1007 n.9 (noting cases, including those on which Republic Services relies, "cit[ed] no authority in support" of their conclusions). In line with courts in this district, the court denies Republic Services' motion to dismiss for failure to specify the applicable state law. Sanchez was not required to plead the specific laws

- 8 -

applicable to his claims but as explained in the next section, Sanchez has only established he has standing to assert claims under Nevada law.

### III. Motion to Dismiss for Lack of Jurisdiction

Republic Services moves under Rule 12(b)(1) to dismiss Sanchez's common-law claims for lack of standing to the extent he asserts claims based on laws outside the state of Nevada. (Doc. 22 at 8–9.) To demonstrate standing, "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 347 (1996) (internal quotes omitted). Sanchez fails to meet this standard.

Republic Services' motion to dismiss under Rule 12(b)(1) is a facial challenge to jurisdiction because it "accepts the truth of [Sanchez's] allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1056 n.1 (9th Cir. 2023) (simplified). Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III" of the Constitution. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotations omitted).

Sanchez argues "whether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws" is a question of predominance under Rule 23, not of standing. (Doc. 23 at 10–11.) But "standing is the threshold issue in any suit. If the individual plaintiff lacks standing, the court need never reach the class action issue." *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003); *see also Easter v. Am. W. Fin.*, 381 F.3d 948, 962 (9th Cir. 2004) ("The district court correctly addressed the issue of standing before it addressed the issue of class certification."). If a named plaintiff fails to establish standing, he cannot "seek relief on behalf of himself or any other member of the class." *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac.*

*Sw., Inc*., 926 F.3d 528, 532 (9th Cir. 2019) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).

Here, Sanchez has not established he suffered an injury outside of Nevada. (Doc. 18 at 6.) Accordingly, to the extent he is seeking to bring claims for violation of laws outside of Nevada, the current complaint does not establish he has standing to do so. *See, e.g., Lindquist v. Farmers Ins. Co. of Ariz*., No. CV06-597-TUC-FRZ, 2008 WL 343299, at *10–11 (D. Ariz. Feb. 6, 2008) (named plaintiff lacked standing to bring claims on behalf of nationwide class under laws of states where he did not suffer injury); *Corcoran v. CVS Health Corp*., 169 F. Supp. 3d 970, 990 (N.D. Cal. 2016) ("Courts routinely dismiss claims where no plaintiff is alleged to reside in a state whose laws the class seeks to enforce."). Because Sanchez may be able to add additional factual allegations establishing he has standing for non-Nevada claims, or he may be able to include additional named plaintiffs with claims in other states to establish broader standing, *see Lindquist*, 2008 WL 343299 at *11, he is permitted to amend his complaint on that basis.

Accordingly,

**IT IS ORDERED** the Motion to Dismiss (Doc. 22) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** no later than **May 14, 2025**, plaintiff shall either file an amended complaint as permitted by this order or a statement that he does not wish to amend the complaint at this time. If plaintiff files an amended complaint, defendants shall respond to that complaint no later than **May 28, 2025**. If plaintiff chooses not to amend his complaint, defendants shall answer the first amended complaint no later than **May 28, 2025**.

Dated this 30th day of April, 2025.

Honorable Krissa M. Lanham
United States District Judge